IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARION J. TUCKER and<br>STEPHANIE TUCKER,<br><br>    Plaintiffs,<br><br>  v.<br><br>CHARLES SCHWAB BANK, f/k/a<br>Charles Schwab Bank, N.A., and<br>MORGAN STANLEY CAPITAL I,<br>INC., f/k/a Morgan Stanley Dean Witter<br>Corporation,<br><br>    Defendants. | No. 12-CV-3399<br><br>Judge John J. Tharp, Jr. |

### MEMORANDUM OPINION AND ORDER

The plaintiffs, Marion and Stephanie Tucker, allege that Defendants Morgan Stanley Capital I, Inc. ("Morgan Stanley") and Charles Schwab Bank ("Charles Schwab") violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA") and the Illinois Uniform Deceptive Trade Practices Act (the "IDPA") and committed fraud, attempted conversion, and unjust enrichment. The Tuckers also allege that Morgan Stanley (but not Charles Schwab) violated the Fair Debt Collection Practices Act (the "FDCPA") and the Illinois Collection Agency Act (the "ICAA"). Both defendants move to dismiss all of the plaintiffs' claims pursuant to Rule 12(b)(6). For the reasons stated below, the Court grants the defendants' motions to dismiss without prejudice.

I.     **Background**[1]

On February 9, 2005, the Tuckers signed a mortgage note and mortgage in favor of Morgan Stanley. Cmplt. ¶ 13. The mortgage conveyed a security interest in the Tuckers' property located in Olympia Fields, Illinois (the "property") to Morgan Stanley. *Id.* ¶¶ 1, 14. On March 1, 2005, Morgan Stanley transferred ownership in the mortgage note and mortgage to a mortgage-backed-securities trust (the "Trust"), which listed Morgan Stanley as the servicer. *Id.* ¶ 15. After filing certain forms with the SEC, the complaint alleges that the Trust filed a "Certification and Notice of Termination," and the Trust was no longer registered. *Id.* ¶ 16. The Tuckers further allege, without providing any detail, that the Trust itself terminated and was dissolved on May 26, 2006, when its final form 10-K was filed with the SEC. *Id.* ¶¶ 16-17. According to the Tuckers, upon termination of the Trust, the Trust's certificate holders received the Trust's assets and became the holders of the note and mortgage.[2] *Id.* ¶ 19.

After the Trust allegedly dissolved, Morgan Stanley Home Loans (an entity that the Tuckers implicitly admit is distinct from Morgan Stanley) began communicating with the plaintiffs about the mortgage. *Id.* ¶¶ 20-21; Resp. Br. (Dkt. 37) at ¶ 13. The first communication consisted of a letter dated January 4, 2011 from Morgan Stanley Home Loans to the Tuckers confirming a payment the Tuckers had made in December 2010. Cmplt. ¶ 20, Ex. H. On May 16, 2011, Morgan Stanley Home Loans induced the Tuckers to enter into a formal mortgage

---

[1] The Court accepts the Tuckers' well-pleaded factual allegations as true and construes all reasonable inferences in their favor. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013).

[2] Defendant Charles Schwab disputes that ownership of the mortgage note and mortgage transferred to the Trust and claims that it owns both. *See* Charles Schwab MTD (Dkt. 19) at 7-11; Charles Schwab Reply Br. (Dkt. 39) at Ex. 1. But because the plaintiffs sufficiently alleged that the mortgage note and mortgage were transferred to the Trust, the Court accepts this as true for the purpose of the motion to dismiss.

repayment plan. *Id.* ¶ 21, Ex. I. Later, on January 30, 2012, Defendant Charles Schwab filed a complaint against the Tuckers to foreclose on the mortgage. *Id.* ¶ 22, Ex. J.

II. **Analysis**

**A. The Tuckers Fail to Adequately Plead Termination of the Trust.**

The Tuckers' claims against both Morgan Stanley and Schwab are predicated on their allegation that the Trust terminated and was dissolved while it held the mortgage and note to the Tuckers' property. Morgan Stanley notes that the Tuckers' allegations on this point are "vague and confusing," and the Court agrees. As the only factual basis for alleging that the Trust terminated while it was the holder of the mortgage and note, the Tuckers attach a document that they call the Trust's "Certification and Notice of Termination," but which in reality is a notice of termination of the *Trust's registration with the SEC*. Although "vague and confusing," the complaint appears to claim that de-registration terminated the trust itself. *See, e.g.*, Cmplt. (Dkt. 1) ¶¶ 16-17 (mischaracterizing the trust's "Certification and Notice of Termination of Registration" as merely "Notice of Termination," and implying that the trust was terminated in conjunction with the filing of its final 10-K Annual Report).

To the extent that the Tuckers' claims depend on the thesis that the Trust's deregistration with the SEC terminated the trust itself, they are frivolous. Whether a mortgage-backed security trust is registered with the SEC has nothing at all to do with its legal existence, and de-registering the Trust does not terminate the Trust's existence. *See, e.g.*, 15 U.S.C. § 78l(g)(4); 17 C.F.R. § 240.12g-4. Although at this stage the Court must take the Tuckers' factual allegations as true and draw all reasonable inferences in their favor, *see Gessert*, 703 F.3d at 1033, the Court need not accept specious claims uncritically. To the extent that the Tuckers allege that the Trust was dissolved due to its deregistration with the SEC, that allegation is simply an erroneous legal conclusion to which no deference is owed. And if the plaintiffs did not intend to allege that

3

deregistration terminated the trust, and that the Trust was dissolved by some other act, they have provided no facts whatsoever that would (if true) establish, or even plausibly suggest, that the Trust was actually dissolved. Either way, at present the Tuckers' allegations regarding the termination of the Trust are insufficient to "state a claim to relief that is plausible on its face," and they do not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Because the Tuckers have failed to allege sufficient facts to plausibly show that the Trust was dissolved, and all of their claims turn on that claim, their complaint will be dismissed in its entirety without prejudice. The Tuckers have leave to file an amended complaint, if they are able to do so consistent with the requirements of Fed. R. Civ. P. 11, within 30 days. Though the Tuckers' entire complaint is being dismissed without prejudice, the Court will nonetheless review the Tuckers' claims against the Morgan Stanley and Charles Schwab to determine whether there are other independent grounds for dismissal.

### B. The Tuckers Fail to State Any Claims Against Morgan Stanley.

Even if the Tuckers had alleged the facts necessary to show that the Trust was dissolved in 2006, they would still fail to state any valid claim against Morgan Stanley. The Tuckers argue that Morgan Stanley violated federal and state law[3] by: (1) sending the plaintiffs a confirmation letter regarding their payment on a loan, and (2) entering into a formal repayment plan with the

---

[3] Morgan Stanley argues that if the Court dismisses the Tuckers' federal FDCPA claim, it should decline to exercise supplemental jurisdiction over the Tuckers' state law claims. Morgan Stanley MTD (Dkt. 17) at 3, 4, 8. But the Tuckers properly invoked the Court's diversity of citizenship jurisdiction. Cmplt. ¶¶ 2, 5, 9, 11. Because Morgan Stanley does not challenge the Court's diversity jurisdiction, its argument that the Court "should decline to exercise supplemental jurisdiction" is misplaced.

4

plaintiffs for their mortgage. *Id.* ¶¶ 20-21, Ex. H-I.[4] These two facts underlie all of the plaintiffs' claims against Morgan Stanley.[5]

Though the Tuckers' complaint alleges that Morgan Stanley sent the confirmation letter and entered into the formal repayment plan, the exhibits attached to the complaint do not mention the Morgan Stanley entity that the Tuckers sued, but rather only Morgan Stanley Home Loans. "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998). Because the Tuckers' exhibit refutes their factual allegations, they have not alleged facts sufficient to state their claims against the Morgan Stanley entity that they named as a defendant. *See id.* at 455.

After Morgan Stanley's motion pointed out that their exhibits involved Morgan Stanley Home Loans rather than the defendant, Morgan Stanley Capital I, Inc., the Tuckers contended for the first time that "[o]n information and belief, Morgan Stanley Capital and Morgan Stanley Home Loans were working together to collect the debt." Resp. Br. (Dkt. 37) at ¶ 13. Even if the Court ignores the Tuckers' improper attempt to amend their complaint in a response brief, *see Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (briefs in opposition to a motion to dismiss may not amend the complaint), they still fail to provide any factual basis

---

[4] Exhibits attached to a complaint become a part of it for all purposes, and the Court can consider the exhibit in its decision without converting the motion to dismiss into a motion for summary judgment. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); Fed. R. Civ. P. 10(c).

[5] The plaintiffs argue that Morgan Stanley violated the FDCPA and ICAA by making false representations in connection with the collection of a debt, evidenced by both the letter and repayment plan. Cmplt. ¶¶ 25-43, 74-93. Furthermore, the plaintiffs' quiet title claim depends on the letter and repayment plan to show that Morgan Stanley asserted legal title to the mortgage note and mortgage. *Id.* ¶¶ 44-53. And the plaintiffs argue that Morgan Stanley committed fraud, attempted conversion, and unjust enrichment by collecting (and soliciting to collect) funds from the Tuckers through the confirmation letter and repayment plan. *Id.* ¶¶ 54-64. Finally, plaintiffs argue that Morgan Stanley violated the ICFA and the IDPA by holding itself out as the servicer of the mortgage in these communications. *Id.* ¶¶ 65-73.

for their conclusory allegation that Morgan Stanley was in any way involved in the events alleged.; *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002) (the Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact"). In fact, the Tuckers' complaint never mentions Morgan Stanley Home Loans at all. The Tuckers appear to have sued the wrong Morgan Stanley entity, which provides the Court with an independent basis to dismiss the Tuckers' claims against Morgan Stanley without prejudice.

### C. The Fraud, Attempted Conversion, and Unjust Enrichment Claims Against Charles Schwab Fail on Their Own Merits, But the Tuckers' Other Claims Would Survive if They Properly Alleged that the Trust Was Dissolved.

Several of the plaintiffs' claims against Charles Schwab would be dismissed even if the plaintiffs had adequately pleaded that the trust terminated in 2006, so the Court addresses the arguments regarding those claims as well.

#### 1. Quiet Title

The plaintiffs argue that Charles Schwab has no legal interest in the mortgage, and that its state court complaint to foreclose constitutes a cloud on the title to the property. Charles Schwab claims that the Tuckers effectively seek to "have this Court declare the mortgage unenforceable and the note unsecured under the guise that the Plaintiffs are unsure of whom to pay." Charles Schwab MTD (Dkt. 19) at 8. That is wrong. The Tuckers "do not contest that the holder of [the mortgage] is entitled to enforce it;" they allege only that *Charles Schwab* is not the holder of the note. Resp. Br. (Dkt. 36) ¶ 10. Under Illinois law, to prevail on a quiet title action "it is not required that a perfect title be established." *Dudley v. Neteler*, 392 Ill. App. 3d 140, 143, 924 N.E.2d 1023, 1026 (Ill. App. Ct. 2009). Rather, the Tuckers "must establish title superior to that of defendants." *Id.* In their complaint, the Tuckers request a declaration stating only that Charles Schwab has no interest in their property or any mortgage on it. Cmplt. (Dkt. 1) at 15-16.

6

Therefore, to succeed on their quiet title claim they need only show that Charles Schwab is not entitled to enforce the mortgage, not that the mortgage is wholly unenforceable.

Charles Schwab next argues that it is the holder of the mortgage note and it cites to the complaint it filed in state court as evidence of that fact. *See* Charles Schwab MTD (Dkt. 19). at 7-8. But the state court complaint attaches only copies of the mortgage note and mortgage without providing any proof of assignment to Charles Schwab. *See* Cmplt. Ex. J. Charles Schwab presented a purported proof of assignment for the first time as an attachment to its reply brief. *See* Charles Schwab Reply Br. (Dkt. 39) at Ex. 1.

On a Rule 12(b)(6) motion to dismiss, the Court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Here, the Tuckers did not attach any proof of assignment to their complaint, nor did they refer to the proof of assignment in the complaint. In fact, the plaintiffs expressly deny the existence of any assignment. Cmplt. ¶¶ 22-23.

The Court declines to take judicial notice of the assignment because it is subject to reasonable dispute. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Charles Schwab admits in its reply brief that it did not record the assignment until July 26, 2012, after the complaint and motions to dismiss were filed. Charles Schwab Reply Br. (Dkt. 39) at 2. As the plaintiffs deny that any assignment took place, there are questions of fact regarding the validity of the assignment that necessitate further discovery and prevent judicial notice. Therefore, the Court cannot consider the mortgage assignment that

7

Charles Schwab attached to its reply brief. Taking the facts alleged in the complaint as true, then, if the Tuckers had adequately alleged that the Trust dissolved while it owned their mortgage and note, they would have adequately pleaded a quiet title claim against Charles Schwab.

### 2. Fraud, Attempted Conversion, and Unjust Enrichment[6]

In Count III of their complaint, the Tuckers allege fraud, attempted conversion, and unjust enrichment claims against Charles Schwab. The Tuckers argue that Charles Schwab committed fraud by recording a *lis pendens* and filing a complaint to foreclose on the property without an interest in the mortgage note or mortgage. The elements of common law fraud are:

> (1) a statement by defendant; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known or believed by the speaker to be untrue or made in culpable ignorance of its truth or falsity; (5) that was relied on by the plaintiff to his detriment; (6) made for the purpose of inducing reliance; and (7) such reliance led to the plaintiff's injury.

*Chow v. Aegis Mortg. Corp.*, 185 F. Supp. 2d 914, 917 (N.D. Ill. 2002) (quoting *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1039, 594 N.E.2d 1355, 1360 (Ill. App. Ct. 1992)) (internal quotation marks omitted). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The Tuckers fail to allege particular facts required to meet each element of common law fraud. Assuming that Charles Schwab's *lis pendens* and complaint to foreclose on the property constitute untrue statements of a material nature, the Tuckers still fail to allege that they relied on

---

[6] Charles Schwab argues that the Tuckers only assert a quiet title action, *i.e.* Count II, against them. Charles Schwab Reply Br. (Dkt. 39) at 1. Indeed, the Tuckers stated in their response brief that they "have stated no other claims against Defendant Charles Schwab." Resp. Br. (Dkt. 36) at ¶ 15. But the complaint contains specific factual assertions against Charles Schwab in Counts III and IV. Cmplt. ¶¶ 55, 57, 62, 66-67, 71, 73. Viewing the complaint in the light most favorable to the Tuckers, the Court finds that it does attempt to set forth claims against Charles Schwab in Counts III and IV, and therefore it will consider Charles Schwab's arguments for dismissing those claims.

those statements, or that they were injured by their reliance. Because the Tuckers fail to allege particular facts establishing the required elements of fraud, their fraud claim fails.

Charles Schwab also correctly argues that it cannot be liable for conversion by seeking to foreclose on real property. Under Illinois law, an action for conversion only lies for personal property—not real property. *See Sandy Creek Condo. Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 295, 642 N.E.2d 171, 175 (Ill. App. Ct. 1994); *In re Thebus*, 108 Ill. 2d 255, 260, 483 N.E.2d 1258, 1260 (1985). Because the Tuckers claim that Charles Schwab is attempting to take their real property, Charles Schwab cannot be liable for conversion.[7]

Finally, the Tuckers have also failed to plead a plausible claim of unjust enrichment against Charles Schwab because they do not allege any facts showing that Charles Schwab was unjustly enriched to the impoverishment of the Tuckers. *See* Cmplt. ¶¶ 54-64; *Sherman v. Ryan*, 392 Ill. App. 3d 712, 734, 911 N.E.2d 378, 399 (Ill App. Ct. 2009) (The elements of unjust enrichment are: "(1) an enrichment, (2) an impoverishment; (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law."). Therefore, because the plaintiffs have not pleaded sufficient facts to support claims for fraud, conversion or unjust enrichment, Count III would be dismissed even if the Tuckers had adequately pleaded that the Trust was dissolved.

### 3. ICFA and IDPA

The Tuckers allege in Count IV of their complaint that Charles Schwab has violated the ICFA and the IDPA by recording a *lis pendens* and filing a complaint to foreclose on the property. To state a claim under the ICFA,

---

[7] Additionally, the plaintiffs actually pleaded "attempted conversion" rather than actual conversion, and the Seventh Circuit has rejected similar claims. *See United States v. Stefonek*, 179 F.3d 1030, 1036 (7th Cir. 1999) ("There are no 'attempted torts.'").

> a plaintiff must allege: (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception.

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908-09 (N.D. Ill. 2012). Because the ICFA asserts fraud, it requires plaintiffs to plead with particularity. *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 1004 (N.D. Ill. 2010). The Tuckers allege that Charles Schwab has attempted to take their property by recording a *lis pendens* and moving to foreclose on the false pretext that it has rights under the note or mortgage. Cmplt. ¶¶ 66, 71. The Court cannot presently credit Charles Schwab's argument that it is the true holder of the note and mortgage, and must accept the Tuckers' allegations. Read broadly, the Tuckers' allegations would be sufficient to meet the necessary ICFA elements.

To state a claim under the IDPA, the plaintiff must allege facts showing that the defendant "engaged in a deceptive trade practice" such as "[passing] off goods or services as those of another" or conduct that "similarly creates a likelihood of confusion or misunderstanding."[8] 815 ILCS 510/2(a)(1), (12). The Tuckers' IDPA allegations hinge on whether any valid assignment of the mortgage to Charles Schwab occurred. As explained above, the Court may not consider the assignment of the mortgage that Charles Schwab attached to its reply brief, nor its argument that the Tuckers defaulted on their mortgage. Rather, it must accept the plaintiffs' allegation that no assignment took place. Therefore, had the Tuckers adequately

---

[8] Charles Schwab correctly notes that the IDPA does not allow for the recovery of damages without a separate common law or statutory violation. *See Vincent v. Alden-Park Strathmoor, Inc.*, 399 Ill. App. 3d 1102, 1110-11, 928 N.E.2d 115, 122-23 (Ill. App. Ct. 2010); *Glazewski v. Coronet Ins. Co.*, 108 Ill. 2d 243, 252-53, 483 N.E.2d 1263, 1267 (1985). But because the Tuckers also seek injunctive relief, and because they do claim other common law and statutory violations, the IDPA claim need not be dismissed on that basis.

alleged the dissolution of the Trust, they would also have adequately alleged a violation of the IDPA.

*   *   *

For the reasons set forth above, the Court grants the defendants motions to dismiss the complaint without prejudice.

Entered: March 29, 2013

John J. Tharp, Jr.
United States District Judge